92  681<br/>128  131

WILLIAM KRANER v. N. A. CHAMBERS, Executrix, *et al.*,
Appellants.

**Cancellation of Contract.** K. and C. contracted to exchange lands which each agreed to clear of incumbrances. K. performed his agreement; C. died without doing his part. It may be conceded that his administratrix unnecessarily delayed performance. But after such delay, K., after bringing action to cancel, agreed to give further time, and within a month after such agreement the administratrix cleared the title to the C. lands. *Held*, all delay had been waived, and no cancellation should have been decreed.

**SAME.** It does not concern plaintiff that a guardian clears land which is to be exchanged by borrowing of herself as guardian, without consent of court.

**SAME.** The lien of a deficiency judgment on foreclosure upon lands not mortgaged, is junior to a prior equitable lien upon the same, created by a written agreement to sell.

**Agreement of Counsel.** Negotiation between the parties, carried on by their attorneys over the telephone, each attorney simply acting as mouthpiece, are not agreements "between attorneys" such as Code 213, declares to be provable, only, by the admission of the attorney, his filed agreement, or an entry of record.

*Appeal from Wapello District Court.*—HON. E. L.
    BURTON, Judge.

SATURDAY, DECEMBER 15, 1894.

PLAINTIFF brings this action in equity to cancel a
contract in writing entered into between the plaintiff
and W. E. Chambers, now deceased, for the exchange
of certain pieces of real property, on the ground of
nonperformance and inability to perform said contract
on the part of deceased and his executrix.   Mrs. N. A.
Chambers, widow and executrix, and Walter E., Ar-
thur E., James W., and Stuart M. Chambers, children
and heirs of deceased, were made defendants.   S. R.
Sax, Charles Sax, E. E. Hesen, Armstrong Brothers,
and George Griswold were also made defendants, for
reasons that will hereafter appear.   The defendants
having answered, the cause was tried to the court, and
a decree entered in favor of the plaintiff, from which
N. A. Chambers, as widow, executrix, and guardian of
the minor heirs, appeals.—*Reversed.*

*McElroy & Roberts* for appellants.

*W. H. C. Jaques* for appellee.

GIVEN, J.—I.   The case was taken under advise-
ment, and an able and exhaustive opinion filed by the
learned judge, which plaintiff quotes at length as a
part of his argument.   Though differing with some of
the conclusions of the learned judge, we recognize the
assistance this opinion has been to us in considering
the case, especially in marshaling the somewhat com-
plicated facts, which are in substance as follows:

Plaintiff, Kraner, and W. E. Chambers, now de-
ceased, entered into a contract in writing as follows:

"This memorandum, made this July 15th, 1890,
by and between Wm. Kraner and W. E. Chambers,

both of Ottumwa, Iowa, witnesseth that said Kraner has this day sold to W. E. Chambers the N. W. 1-4 sec. No. 32, twp. 73, R. 13, of Wapello county, Iowa, and the lease of M. V. Wright and wife, and the notes of $325 and $325 of said Wright; it being understood between the parties hereto that the other unpaid rents held by Kraner is not to be a lien upon said premises, the property, and stock.   The said Chambers is to pay for the same by conveying the property on Fifth street, to wit, lot 44 and a part of lot 45, Ottumwa, Iowa, as owned by said Chambers.   Said respective properties are to be conveyed free and clear of liens, and by warranty deed, and each party is to furnish the other abstract of title; said Chambers is to have rents until August 1, 1890.   The said Kraner does not give possession of farm, except to assign lease.

"Signed, July 15, 1890.     W. E. CHAMBERS,

"WILLIAM KRANER."

On July 17, 1890, Kraner and wife executed a deed to the farm, and procured an abstract showing the land free from liens.   The deed and abstract were left with George Griswold, the abstractor, to hold until Mr. Chambers freed his lots from liens.   On the same day, Chambers and his wife executed a deed to said lot 45 and part of lot 44 to Kraner, and caused abstracts of their title to be made out, which were not completed until July 31.   This deed and these abstracts were also left in the possession of Mr. George Griswold.   During the negotiations, Chambers represented that there was about two thousand, two hundred dollars in incumbrances on the lots.

On July 31, Mr. Chambers through Mr. Lewis procured a loan of two thousand, two hundred dollars from defendant Charles Sax, and gave to Sax a mortgage on the farm as security.   The Chambers abstracts show that, on the day the written contract was made, lot 44 was incumbered with a mortgage executed by

Chambers and wife, for one thousand dollars, to C. H. Greenleaf, and by a mortgage for nine hundred dollars to William Winslow. Releases of these mortgages were filed for record on said July 31, Mr. Chambers having applied the money borrowed from Charles Sax in satisfaction thereof. By these releases, lot 44 was freed from incumbrance, except one half the year's tax for 1889. As to lot 44, the abstract showed the following incumbrances: A mortgage from Chambers and wife to S. R. Sax for one thousand dollars overdue. It also showed a conveyance from Chambers and wife to Armstrong Brothers, October 10, 1886, and a mortgage back to Chambers to secure one thousand dollars. On July 17, 1888, Armstrong Brothers reconveyed the property to N. A. Chambers. Prior to the contract with plaintiff, Mr. Chambers had assigned this Armstrong mortgage to Flora B. Graves. Prior to the contract with plaintiff, Mr. Chambers sold said lot 44 to defendant E. E. Hesen, taking from him his six promissory notes for three hundred dollars each as the consideration. Before the execution of said written contract, Hesen and Mr. Chambers had agreed to relinquish and cancel the sale,—Hesen to receive back his notes, to remain in possession as a tenant, and to thereafter pay rent. Prior to this agreement between Chambers and Hesen, Chambers had pledged said notes to different creditors as collateral security, and they were so held at that time. Neither Kraner nor Hesen knew that the notes were so pledged, nor of the mortgage from Armstrong Brothers. Mrs. Chambers was taken sick with typhoid fever July 15, and was confined to her bed until about August 8, during which time she required the care of her husband, so that he did not give constant attention to business. About the eighth or tenth of August he was taken with the same disease, and continued ill until the day of his death, September 11, 1891, during which time he was

incapable of transacting any business. Thus matters stood at the time of the death of Mr. Chambers. Mr. Chambers left a will, in which Mrs. Chambers was designated as executrix, which will was subsequently admitted to probate, and Mrs. Chambers qualified thereunder. On October 16, 1890, after the will had been filed, but before Mrs. Chambers had qualified, plaintiff's attorney addressed to her, as executrix, a note setting forth in substance the written contract, that the lots were to be free of incumbrance, that they were incumbered, and notifying her as follows: "Now, unless you at once free the lots from the incumbrances and contract of sale to Hesen, Mr. Kraner will at once rescind the contract, and retake his deed from George Griswold." Mrs. Chambers did not answer, and on October 18 plaintiff caused the original notice in this case to issue, which was served October 21, and the petition filed October 20.

As to the foregoing facts, there is no controversy, but as to what follows there is more or less conflict in evidence; but we think the facts, as we shall state them, are fairly established by a preponderance of the evidence.

Several times during January and February, 1891, the plaintiff declared to Mrs. Chamber's counsel his willingness to make a settlement, and to carry out the written contract between him and Mr. Chambers, if he could get the lots, as agreed, free of incumbrance. At one time, when depositions were to be taken with a view to a trial of this cause at the coming March term, the taking was postponed for the purpose of allowing Mrs. Chambers to see if she could arrange to clear the lots of the existing incumbrances thereon. On the day to which the taking depositions was postponed, plaintiff and his attorney being together in the attorney's office, and the defendant Mrs. Chambers and her attorney being together in

his office, the attorneys communicated by telephone
with regard to the settlement of the case, each attorney
repeating the communications from the other to his
client, and answered as directed by his client. There
is a marked conflict in the evidence as to what passed
at this time. Without discussing the evidence at
length, it is sufficient to say that in our opinion the
preponderance of the evidence is in favor of the con-
clusion that it was then and there agreed between
plaintiff and Mrs. Chambers that if she would perfect
the title to the lots the plaintiff would carry out the
written contract. Plaintiff insists that one of the con-
ditions of this agreement was that Mrs. Chambers
would pay the costs of this action and the fee of plain-
tiff's attorneys.

We are satisfied that the matter of attorney's fees
was not mentioned, and that the subject of costs was
not mentioned until the parties had assented to the
agreement, and that then, upon the statement of coun-
sel for plaintiff that the costs would only amount to
five or six dollars, Mrs. Chambers agreed to pay the
costs. This agreement being reached, the notary was
dismissed, and the depositions were not taken. The
cause was not submitted to the court until October 6,
1892. Mrs. Chambers, as executrix, with the consent
of her sureties as guardian, but without any order of
court, took money in her hands as guardian, and paid
the mortgage on the farm to Charles Sax, and the
mortgage on the lot to S. R. Sax, and took up the
notes of defendant Hesen, and surrendered them to
him, receiving his quitclaim deed to lot 44. The mort-
gage from Armstrong Brothers to W. E. Chambers was
held by Flora B. Graves as collateral security, and had
been merged into judgment in November, 1890. On
March 23, 1891, she procured said judgment to be
assigned to E. E. McElroy, who on the same day, by
proper entry, released lots 44 and 45 from all liens

under said judgment. She also at the same time paid the costs in said case. By these transactions the lots were freed from the incumbrances mentioned in plaintiff's petition, and the farm from the mortgage to Sax.

After the death of Mr. Chambers, several actions were brought to foreclose mortgages executed by him upon real estate other than the lots in question. The decrees of foreclosure were entered in those cases in favor of the different plaintiffs against the estate of Chambers, decreeing the mortgages as prior liens on the real estate described therein, ordering special execution, and declaring that any amount remaining unpaid after exhausting the mortgaged property should be considered established as third-class claims against the estate. These judgments were not taken until long after the contract in question, and after the deposit of the deeds as already stated. Under the holding of this court in *Trust Co. v. Holderbaum*, 86 Iowa, 3, 52 N. W. Rep. 550, those parts of the judgment established as claims of the third class did not become liens upon these lots. Our conclusion is that by April 3, 1891, the defendant Mrs. Chambers had succeeded in removing all the incumbrances that stood against the lots to be conveyed to the plaintiff, including the taxes then due.

II. Plaintiff asks a cancellation of the written contract on the ground of nonperformance, and inability to perform. As to the allegation of inability, it is sufficient to say that notwithstanding the insolvency of Mr. Chambers and of his estate, and the complicated condition of the title to the lots, Mrs. Chambers was able to and did remove all the cloud upon the title. That she was enabled to do this as executrix, by borrowing money of herself as guardian, with the consent of the sureties on the guardian's bond, without an order of court, does not concern the plaintiff. It is enough for him to know that the incum-

brances have been removed. It is immaterial to him whether the farm may be held for repayment of this money on behalf of the wards. The real contention is whether the written contract should be canceled because of the failure of Mr. Chambers and of his executrix to perform it on their part within the time required.

III. As no time is fixed in the written contract within which Mr. Chambers was required to remove the incumbrances, it is conceded by the counsel—and correctly so—that he was entitled to a reasonable time, and that what would be a reasonable time must be determined in the light of all the circumstances. If the plaintiff, either before or after the expiration of a reasonable time, consented to further time, and no specific time was named, the same rule will apply. In Bishop on Contracts (section 795) it is said: "The waiver may be by acts after, the same as before, default as where one acquiesces in the doing to-day of what ought to have been done yesterday." Plaintiff contends that more than a reasonable time had elapsed before the sickness and death of Mr. Chambers, and that therefore he is entitled to a cancellation of the contract. Let this be conceded. But we have seen that he did not stand upon his right to cancellation because of the failure of Mr. Chambers. By his notice of October 16 to Mrs. Chambers, he waived that right, and conceded to her the privilege of at once freeing the lots from incumbrances and the contract of sale to Hesen. Under the conceded rule, "at once" meant a reasonable time. It may be conceded, again, that Mrs. Chambers did not free the lots from the incumbrances within a reasonable time after the receipt of this notice.

The evidence shows quite conclusively that in January, February, and the early part of March, 1891, the plaintiff repeatedly declared his willingness to carry

out the contract if Mrs. Chambers could and would remove the incumbrances. Because of this willingness, the taking of depositions was postponed until the tenth of March, that Mrs. Chambers might see whether she could remove the incumbrances, and on the tenth of March was postponed indefinitely, on her assurance that she could and would do so. Whether these interviews amounted to an agreement of settlement or not, there can be no doubt but that, relying upon plaintiff's repeated assurance that he was still willing to carry out the contract if the incumbrances were removed, Mrs. Chambers went forward and removed them, as already stated. It can not be doubted but that on the tenth of March, 1891, when the taking of depositions was indefinitely postponed, the plaintiff understood that Mrs. Chambers was going to try to remove the incumbrances, upon the strength of his assurances that he was still willing to carry out the contract if this was done within a reasonable time. Mrs. Chambers did not complete the removal of the incumbrances until April 3, 1891. In view of the circumstances, the number and condition of the incumbrances, then known to the plaintiff, we think the incumbrances were removed within a reasonable time after that privilege was accorded on the tenth day of March, 1891. It does not appear that plaintiff thereafter objected to carrying out the contract on the ground that these incumbrances were not removed, or that they were not removed within a reasonable time. He objected upon the ground that said decrees of foreclosure were liens upon the lots, and that Mrs. Chambers had agreed to pay the costs of this case, and his attorneys' fees therein. We have seen that the decrees were not liens upon the lots, and we think the preponderance of evidence is against the claim that Mrs. Chambers agreed to pay the attorneys' fees, or any other than the five or six dollars costs which had then

accrued. "A party who, standing by, has concurred in and accepted what the other did in fulfillment, is not in a position to deny that the contract has been fulfilled." Bish. Cont., section 796. It seems to us that under these facts it would be inequitable and unjust to cancel this contract, that has thus far been performed.

IV.  Another sufficient reason why the contract should not be canceled is the fact, as we find it to be, that on March 10, 1891, it was agreed between the parties that if Mrs. Chambers would remove the incumbrances within a reasonable time the contract should be carried out. She did, as we have seen, remove the incumbrances within a reasonable time; but it is said that this agreement, if any, was between counsel, and that the evidence thereof is not receivable, under paragraph 2, section 213, of the Code, which provides that an attorney may bind his client to any agreement in respect to any proceeding within the scope of his proper duties and powers. "But no evidence of any such agreement is receivable except the statement of the attorney himself, his written agreement signed and filed with the clerk, or an entry thereof upon the records of the court." This was not an agreement between counsel, but between their clients. True, the attorneys only communicated together through the telephone, but each communicated to the other the propositions of his client, and the answer of the other to the propositions. The attorneys, as was the telephone through which they communicated, were the mere medium through which each party spoke for himself to the other. It does not appear that plaintiff, at any time prior to the removal of the incumbrances, insisted upon a cancellation of the contract, except as he may be said to have done so by his notice of October 16, and the commencement of this action. He waived what right he had to cancellation because of

previous failures by consenting to further time and by
the agreement of settlement. It was not until after the
land had appreciated, and the lots depreciated, in
value, and until after the mortgage which Chambers
had placed upon the farm, and which the plaintiff had
viewed with apprehension, were paid off, and until
after the incumbrances on the lots were removed, that
the plaintiff first positively declined to carry out the
contract. Again we say that it would be inequitable
and unjust, under these circumstances, to cancel this
written contract.

V.   It will be observed that under the written con-
tract, in addition to the land, plaintiff sold to Cham-
bers the lease of M. V. Wright and wife, and two notes
of Wright's for three hundred and twenty-five dollars
each, and that Chambers was to have the rents derived
from said lots to August 1, 1891. The lease and notes
have never been transferred, and plaintiff has remained
in possession of the farm, through the tenants, and
has received the rents and profits thereof. It also
appears that the plaintiff received the rents from the
lots for two or three months following August 1, 1891,
in his own right, and thereafter as receiver in this case,
having been appointed by the court. In the view we
take of the case, the plaintiff should account for the
lease, the notes, and rents of the farm accruing since
April 3, 1891, and retain the rents received from the
lots in his own right and as receiver. Plaintiff was
bound to pay the taxes falling due against the lots
after April 3, 1891, and the estate of Chambers to pay
the taxes on the farm falling due after the deposit of
plaintiff's deed, July 17, 1890, and six dollars of the
costs of this action.

In the opinion of the learned judge the fact is
noticed that, while the written contract calls for the
conveyance of "lot 44 and a part of lot 45 of Ottumwa,
Iowa, as owned by said chambers," the deed from

Chambers and wife to Mr. Kraner is for lot 45 and part of lot 44. This evident error in the deed is not noticed by either party, either in his pleadings or argument, and no question is made but that the deed was intended to convey the lots as described in the written contract, and should be so decreed. The decree of the district court is reversed, and the case remanded for an accounting and decree in conformity with this opinion. REVERSED.