JOHN FREDERICK GUTZ et al., Appellants, v. WILLIAM JOHN HOLAHAN, Appellee.

No. 40016.

NOVEMBER 21, 1929.

REHEARING DENIED FEBRUARY 14, 1930.

*D. M. Kelleher, R. F. Mitchell,* and *T. G. McDermott,* for appellants.

*Blythe, Markley, Rule & Clough* and *Claude A. Hamilton,* for appellee.

KINDIG, J.—There is presented for decision here but one primary controversy. That problem involves the plaintiff-appellants' right to rescind their contract to purchase from  the defendant-appellee a 320-acre farm in the province of Manitoba, in the Dominion of Canada. Appellants, John Frederick Gutz and Clarence Melvin Hanson, in August, 1919, began to purchase Canadian real estate. In all, they bought 4,500 acres thereof. At first, appellants themselves went to Winnipeg, Canada, where the first transaction was consummated. Later, however, they conducted their affairs through a real estate agent, Michael Scott, whose residence and place

of business were in Winnipeg, Canada. It was through said agent that the land in dispute was bought, and the contract therefor completed.

The defendant and appellee, William John Holahan, is a resident of Mason City, while the appellant Gutz lives at Pomeroy, and the appellant Hanson at Fort Dodge. Appellee and appellants had never met, and were not personally acquainted, until about the time the present suit was commenced. All business relating to the contract in the case at bar was conducted through the Canadian agent, Michael Scott.

Said agreement covering the purchase of the half section aforesaid was executed in writing on the 15th day of September, 1919. Embodied therein was a provision that appellants were to pay appellee a consideration of $8,000 for said land. $1,600 of such purchase price was paid on the execution of the contract, September 15, 1919, and the balance thereof matured as follows: $1,600 on March 15th in each of the following years: 1920, 1922, 1923, and 1924. Deferred payments bore interest at the rate of 6 per cent per annum. Title was to be transferred when the consideration was paid in full. When appellants performed their obligations regarding said payments, the appellee, in accordance with the contract, was to convey the realty by transfer under the "Canadian Real Property Act." Under such conveyance, the real estate was to be transferred free and clear of all taxes, liens, and incumbrances. A $1,600 mortgage, however, was on the half section at the time the contract was executed, and the agreement provided that appellee should keep this incumbrance "in good standing, and pay it off" before appellants were required to discharge the final installment of purchase money under the agreement. Notation is here made that the facts which will allow or defeat appellants' right to a rescission center around appellee's performance of his duty to discharge the mortgage. Delay is asserted as a ground for rescission. Each deferred installment was promptly paid by appellants, but, apparently through the fault of the agent, Scott, the $1,600 mortgage was not released, certain taxes appeared unpaid, and the conveyance from appellee to appellants was incomplete. So, on October 4, 1926, appellants served upon appellee their notice to rescind the contract. On the next day, the present suit was instituted.

Before the trial, however, appellee tendered performance of the contract, and offered to convey the real estate free and clear from the mortgage and taxes. Rejection thereof was made by appellants, and, as before related, the district court found for the appellee, and denied the rescission.

I. Should there be a reversal? Were appellants entitled to rescind?

Dispute arises at this juncture concerning whom the Canadian agent, Scott, represented during the various phases involved in performing the contract. No doubt appellee listed this land with said agent for sale. Accordingly, when appellants made the purchase, a commission of $1.00 an acre was paid to the agent, Scott, for his services. Nevertheless, so far as revealed by the record, the agent had no further authority to act for appellee. His right to represent them ended with the sale. *Draper v. Rice,* 56 Iowa 114.

Notwithstanding that, appellants urge that the notes evidencing the deferred installments under the contract were payable at the Canadian agent's office. Therefore, they maintain that he was the representative of appellee, and payment by them to him constituted a satisfaction of the obligation due the appellee. If this were true, the limit of such authority was the mere right to transfer the money to appellee. Such agency, at most, under the facts in this record, was no broader than the foregoing, and hence did not include any authority to pay or satisfy the mortgage. Parenthetically, it is here observed that the question is not whether the particular mortgage in suit was paid, but rather, do the circumstances justify the delay in completing the title? Thus the relationship between appellee and the Canadian agent existed during the month of March, 1924, when the final installment under the contract was paid by appellants.

Conversely, there was a broader relationship between the Canadian agent and appellants. Manifestly, all of appellants' Canadian business relating to the 4,500 acres of land aforesaid was carried on through the agent, Scott. Included within those business affairs were all transactions regarding the land in suit. September 30, 1919, appellants executed a caveat, which was filed with the district registrar of the Land Titles District of

Winnipeg. Contained within that instrument is the following provision:

"We [appellants] appoint the office of Michael Scott at Room 204 in the Scott Block, and at No. 272 Main Street, * * * in the city of Winnipeg * * * as the place at which notices and proceedings relating hereto may be served."

Much correspondence took place between appellants and the agent. These letters and other communications cover a period from 1919 to 1926, both inclusive. One object, apparently, in providing for payment in Canada was to enable appellants to avail themselves of the advantage in exchange between that country and the United States. Wherefore, when payment was sent to Canada by appellants, they executed a blank check, and authorized the agent, Scott, to fill it in according to the current rate of exchange. Moreover, during those years, Scott, as the agent for appellants, rented the Canadian property, collected the rents, paid the taxes, mortgages, and interest, and looked after the assessments and the reduction thereof. Likewise, that representative, acting for appellants, examined their titles, procured conveyances and transfers, and generally transacted their business in Canada. Furthermore, the agent protected appellants in closing the various deals for the purchase of land in the Dominion. He represented them there at all times in controversy, including March, 1924. Whatever delay there was in performing the contract was due to the dereliction of this representative.

With the foregoing facts as a background, it is necessary to consider the immediate correspondence leading up to the transactions in March, 1924. About March 13, 1923, the appellant Gutz wrote the agent, Scott:

"* * * I would also call your attention to the fact that at the time we purchased the south half of 9 [the land in controversy] from Mr. Holahan [the appellee], there was a mortgage against the same for $1,600 which Mr. Holahan was to pay before we made final payment with him. He may be owing more on the land. I am calling the same to your attention and suggest this matter should now be *adjusted. Wish you would see to it we are protected in this* * * *" (The italics are ours.)

Responding to that letter, Scott wrote Gutz, on March 17th of the same year:

"The mortgage of $1,600 is still standing * * *, but this can run for another year, but will have to be paid off before the next installment falls due. *I will see that you are protected in this matter.*" (The italics are ours.)

On March 12, 1924, the agent, Scott, again wrote to the appellant Gutz:

"The total amount required to obtain title to the above [land in question] is $1,600 and interest for one year at 6%, altogether $1,696.00. I recently obtained from W. J. Holahan [appellee], the vendor, a transfer of the land. There is a mortgage of $1,600 · against the land which with interest to date amounts to $1,728, and Mr. Holahan [appellee] has instructed me to pay off this mortgage with the proceeds of the payment to be made by you and call upon him for any shortage. If you therefore forward me the amount required I will obtain discharge, register transfer, and discharge, and clear title, and forward certificate in due course."

Following this letter, on March 14th, appellant Gutz wrote Scott:

"I am inclosing herewith two checks * * *: One for $1,692.61 to apply in payment of the balance due on the south half of Section 9-10-6E [the land in question]. * * * I understand that it is in connection with the south half [the land in question] that we do not have the deed or transfer of the land to us and also in connection with which there is a $1,600 mortgage with interest unpaid and which Mr. Holahan [appellee] is to pay under the terms of our agreement. *You will, therefore, please see to it that everything is fixed up as it should be, proper deed or transfer filed and abstract or certificate of title issued to us* * * *" (The italics are ours.)

Subsequently, on March 19th, the agent, Scott, wrote appellant Gutz:

"I am in receipt of your letter inclosing checks for $1,692.61 * * * payment in full of the balance owing on the south half of 9-10-6E [the land in question] * * *. I will pay

[this], file transfers and discharge, and in about 10 days ought to be able to report title clear. I inclose note of W. J. H. [appellee] covered by above payment.''

Upon the receipt of the final installments from appellants, Scott obtained the note from appellee evidencing the same, and returned it to the Iowa purchasers. While so doing, he retained the $1,600 and interest, no part of which was ever paid to appellee. Obviously, the purpose of the agent at that time was to satisfy the $1,600 mortgage and protect appellants' interests, in accordance with the correspondence above quoted. Because of financial embarrassment, however, it appears that Scott did not immediately discharge the mortgage, and accordingly the delay arose. Grievance is predicated thereon, and because thereof the rescission is sought.

Argument is advanced by appellants on the theory that appellee was tardy in performing his obligations, because: First, two years' taxes were unpaid; and, second, the $1,600 mortgage was not discharged. Replying thereto, appellee contends: First, that the taxes were in fact paid, but, because of Scott's delinquency, proper discharge thereof was not obtained from the Canadian officials; and, second, that he surrendered appellants' final note, and acquiesced in the arrangement permitting their agent to use said $1,600 for the satisfaction of the said mortgage. Contention is made by appellants that Scott had no such authority to act for them. Resultantly, they insist that he was appellee's agent on this occasion. Default arose, appellants say, because appellee and his agent did not discharge said mortgage and make conveyance according to the purchase contract. It must be observed that Scott was appellants' agent for many purposes. That representation was broad and extensive. See *Burlington Sav. Bank v. Prudential Ins. Co.*, 206 Iowa 475; *Burlington Sav. Bank v. Prudential Ins. Co.*, 207 Iowa 808; *McCormick Harv. Mach. Co. v. Lambert*, 120 Iowa 181; *Fritz v. Chicago Grain & Elevator Co.*, 136 Iowa 699; *Donaldson v. Kenegy*, 197 Iowa 893; *Sioux City Cattle Loan Co. v. Lovrien*, 198 Iowa 296. Whatever relationship of that kind existed between Scott and appellee is narrow and limited. Possibly at the final transaction during March, 1924, Scott, in some respects, represented both parties.

Assuming, without deciding, that this was true, yet ap-

pellants consented to the arrangement, and throughout the proceedings, Scott was protecting their interests, had charge of obtaining a transfer for them, was perfecting their title, and did not deliver the $1,600 to appellee, but, with appellants' consent, kept the same, in order that their interests might be the more satisfactorily conserved. Scott alone, under the arrangement, was to perfect the title and discharge the liens. Under the contract, the mortgage should have been satisfied before the final payment; but, according to the correspondence above set forth, that provision was waived by appellants. Without appellants' consent, that final payment could not have been made until the mortgage was satisfied by appellee. But, notwithstanding the foregoing, appellants permitted Scott to use the final payment of $1,600 to discharge that obligation, and thereby relieved appellee from said condition precedent. Time was the essence of this contract. Yet appellants waived it by consenting that Scott perform the duties otherwise imposed upon appellee. Relinquishment thereby was made of any requirement that the contract be exactly fulfilled in the particular event indicated. See *Bales v. Williamson,* 128 Iowa 127; *Hawes v. Swanzey,* 123 Iowa 51; *Kraner v. Chambers,* 92 Iowa 681. Moreover, the agent, Scott, under the arrangement outlined in the correspondence, was to pay the mortgage with appellants' money, so far as it would satisfy the same, and then call upon appellee for the balance. Likewise, Scott was to procure for appellants the proper conveyances and title, and protect their interests in reference to the discharge of the mortgage. Consequently, Scott, in pursuance of his duties, procured from appellee a transfer of this land in February, 1924. This was preparatory to completing the transaction in the following March. That transfer, thus obtained, was to Louise Ruser and appellants, Gutz and Hanson. Louise Ruser apparently was the assignee of the appellant Hanson, and at least some of the subsequent delay was brought about because the Canadian registrar desired proof concerning Louise Ruser's right to take title. Acquiescence in Scott's failure to file said transfer was made by the appellants.

Apparently they had arranged for another division of the real estate among the interested parties. So, the Canadian agent, Scott, demanded and obtained another transfer from

appellee, under date of July 6, 1925. Within that instrument, the land was conveyed, subject to the mortgage in question. Appellee explains it was his understanding, at the time, that appellants desired the transfer, with the mortgage exception, because their agent was paying off the incumbrance with money which otherwise would have belonged to the former. Complaint is made by appellants because the alleged transfers were incomplete, and not in such form as would entitle them to registration. Explanation is furnished by appellee, however, that it was customary for Scott to supply the necessary information for the land office and fill in the blanks. Some correspondence from the land office indicates that this is true. In any event, the conveyances executed by appellee were those demanded by Scott, who, at the time, was acting for, and conserving the interests of, appellants. Nevertheless, appellants insist that they did not know, during this long interim, that Scott had not paid the mortgage.

Conceding that is true, nevertheless Scott, throughout the period, was acting as the intermediary, burdened with the duty of using the $1,600 payment to satisfy the mortgage in question. Perhaps, in so doing, he was acting as the agent of both appellee and appellants. Each party intrusted Scott with the money, and to him they looked for the completion of the transaction. As thus arranged, appellants consented that what otherwise would have been appellee's duty should be, and was, transferred to Scott. Throughout each stage of the transaction, appellee performed everything required of him. While it is possible, when the second transfer was signed, appellee knew the mortgage was not paid, yet there is no substantial evidence in the record to show that he understood Scott was in default. Up to this time, appellants had not suggested to appellee that he was to perform any of the duties otherwise conferred upon Scott. Neither appellee nor appellants apparently understood that Scott was "stalling," and failing to discharge his trust.

At the late date of August 31, 1926, appellants for the first time complained to appellee about Scott's delinquency. Through a letter written at that time, they said:

"Scott kept putting us off last year, claiming first that he could not hear from you, nor locate you, then later advised that he had received the deed, but that it had to be returned

for some correction and so on. While Scott has not said so, we infer from his recent letters that the $1,600 mortgage covering the land perhaps has not been taken care of * * *. Those associated with me in this transaction are now insisting that the matter be cleaned up at once, or that we will be obliged to start proceedings to bring the matter to a head. I wish you would let me hear from you and advise just what the trouble is. We do not wish to cause any unnecessary expense in the matter, but it has been dragging along now for a year and a half, which we believe is quite long enough.''

Immediately, appellee wrote appellant Gutz that he was writing Scott for information. Afterwards, appellants again complained to appellee concerning Scott's delay, and on each occasion, appellee assured the appellants that he would do everything possible. Finally Scott called upon appellee for money, and appellee immediately furnished it, in order that the transaction might be closed.

Continually throughout appellants' letters to appellee wherein they complain of the delay, they in no way repudiate the authority conferred upon Scott by them. (We do not here decide or suggest that such authority could have been repudiated by appellants without the consent of appellee.) Such termination of authority was not made by appellants until October 21, 1926; and even then, appellee was without notice thereof. The charge is made by appellants that appellee acquiesced in Scott's delinquency, and conspired with him to harm appellants. Proof of that charge, however, is entirely lacking. No fraud is shown. There is evidence that appellee, just before the suit was brought, gave appellants assurance that Scott would finally perfect the title, and during the same time, as before stated, appellee advanced the money to Scott. Yet in so doing, appellee was merely assisting the intermediary adopted by both parties for the completion of said transaction. We do not decide whether appellee or appellants would have been the loser, had Scott embezzled the money; for such question is not involved. Scott finally completed the title, and as thus perfected, the transfer and records were offered to appellants. They have lost nothing, for they could not have sold the premises during the interim.

Necessarily, then, we are constrained to hold that appellee

849

was not responsible for the delay, under the circumstances, and, as found by the district court, appellants are not entitled to a rescission.

II. William Parker Fillmore, a barrister at Winnipeg, Canada, testified that, under the Canadian law, a waiver would not result from the vendee's acquiescence in a delay when time is the essence of the contract. Upon that premise appellants base their argument that they are entitled to a rescission here. Manifestly, the present controversy involves more than a mere failure to demand immediate performance; for we are here confronted with a record showing that appellants authorized Scott to act for them in the premises, and appellee so understood. Delay was caused, not by appellee, but by Scott, the agent. In making this pronouncement, we assume, without deciding, that the Canadian law would, in any event, apply to this controversy.

III. Another obstacle confronts appellants. It appears impossible for them to place appellee in *status quo*. By at least prima-facie evidence, it is shown that the land in Canada was rented during the year 1926. Wherefore, when the rescission was attempted, it does not appear that appellants could have placed appellee in possession. Offer to surrender possession was made by appellants, but that would be of no avail unless the tenants gave their consent.

Considering the whole record, therefore, the judgment of the district court should be, and hereby is, affirmed.—*Affirmed.*

ALBERT, C. J., and EVANS, DE GRAFF, and GRIMM, JJ., concur.