Exchange National Bank, Appellee, v. T. F. McCaffery, Sheriff, Appellant.

CARRIERS: Carriage of Goods—Bills of Lading—Indorsement—Attachment—Priority. A holder of a properly indorsed bill of lading, as collateral security for advances made to pay the draft attached thereto, is superior in right to an attaching creditor of the consignee.

PRINCIPLE APPLIED: Cochran, on August 19th, bought a carload of corn at Council Bluffs. The seller shipped the corn to itself or order at Little Rock, with directions to notify Cochran. It indorsed the B/L in blank, attached a sight draft for the purchase price and sent same to Little Rock for collection, at which latter place they arrived on August 22d. Cochran, on August 22d, took up the B/L and draft by his personal check, O.K.d by his bank, plaintiff herein, and, on the same day, delivered the B/L to his said bank, together with his note for a slightly smaller amount than the check. This was pursuant to a standing arrangement between Cochran and his bank, by which, in such cases, the bank O.K.d Cochran's check, advanced the money, and took the B/L *as collateral.* On August 22d and 23d, Cochran was overdrawn at the bank. In taking the O.K.d check to the collecting bank and taking up the B/L and in delivering it to the bank, Cochran *was acting for the bank.* On the afternoon of August 23d, creditors of Cochran attached the corn in the railroad yards at Council Bluffs. Plaintiff learned of this attachment on August 27th. *Held,* plaintiff's right to the corn was prior to that of the attaching creditors.

**FRAUD:** Evidence—Degree of Proof. The following principles are recognized:

    1. Fraud will not be presumed; nor will it be inferred from circumstances which, in the light of the entire case, are consistent with honesty.

    2. Proof of fraud must be clear, satisfactory and convincing.

    Evidence reviewed, and held insufficient to show fraud in the claim of a bank to a bill of lading, with consequent right to the property prior to an attaching creditor.

**FRAUD:** Evidence—Taking Security from Responsible Party. Taking collateral security from a responsible party is not evidence of fraud.

**PLEADING:** Amendments—Failure to Request Continuance—Waiver. If no continuance is asked on account of an amendment, complaint cannot afterwards be made that time was not granted.

**TRIAL:** Verdict—Form of Verdict—Inaccurate Terms. The use of inaccurate terms in preparing forms of verdict for the jury will be treated as harmless, when the form as a whole is clear.

*Appeal from Pottawattamie District Court.*—O. D. WHEELER, Judge.

FRIDAY, APRIL 7, 1916.

THIS is an action at law brought by plaintiff against the defendant as sheriff of Pottawattamie County, Iowa, to replevin a certain carload of corn then in the custody of said sheriff under a writ of attachment issued by the district court of Pottawattamie County, Iowa, in a case then pending therein brought by the Cavers Elevator Company against one H. K. Cochran. There was a trial to a jury, and, at the conclusion of the testimony, the defendant moved for a verdict in his favor, which was overruled. Plaintiff also filed a motion for a directed verdict in his favor, which was sustained. It is conceded that the value of the corn was $556.28. The verdict and judgment was that plaintiff was entitled to the possession of the property and that the value was $556.28, and that the interest of the bank therein is that of bailee to the extent of $609 and interest at six per cent. from August 22d, 1910.

The $609 represents the amount of a note given to plaintiff. From the judgment against defendant, he appeals.—*Affirmed.*

*W. C. Lambert* and *John J. Hess,* for appellant.

*Saunders & Stuart,* for appellee.

Preston, J.—It is conceded by appellant there is no dispute as to the law, and the propositions are as to whether there was sufficient evidence to take the case to the jury.

The testimony shows without any substantial dispute that H. K. Cochran was engaged in the grain business at Little Rock, Arkansas. About August 19, 1910, he arranged with the Union Grain & Elevator Company to sell him a carload of corn to be shipped over the Rock Island line from Council Bluffs to Little Rock, Arkansas. The corn was placed in the car and consigned by the elevator company to its own order at Little Rock, with instructions to notify H. K. Cochran. The Union Grain & Elevator Company indorsed the bill of lading in blank, and this was attached to the sight draft. The sight draft, with bill of lading attached, was deposited with the Merchants National Bank of Omaha, and by it transmitted to the German National Bank at Little Rock. It was the practice of the plaintiff bank, in its dealings with Cochran, to place its O. K. upon checks drawn by Cochran, and these checks were in turn used for the purpose of taking up bills of lading and drafts. This O. K. of the check was for the purpose of enabling the banks to make prompt remittance without waiting for the checks to clear through the clearing house.

The defendant offered practically no evidence, and attempted to make its case upon the cross-examination of plaintiff's witnesses and interrogatories attached to its amended and substituted answer. In other words, as appellant says, he was compelled to go into the camp of his enemies for his testimony.

The testimony of the witness Cochran and of Rather, who

was cashier of the bank at the time of the transaction, was that an agreement existed between plaintiff and Cochran, by which it O. K.d the checks given by Cochran to take up sight drafts where bills of lading were attached, and that the bills of lading became the property of the bank as collateral security for the money advanced by the bank to take up the sight draft and bill of lading. When this sight draft, with bill of lading attached, arrived at Little Rock on the 22d day of August, Cochran drew a check upon the plaintiff bank, which was O. K.d by it. He went to the German National Bank and took up the bill of lading. The carload of corn had not then left Council Bluffs, as it was attached by the Cavers Elevator Company on the afternoon of the 23d day of August in the railway company's yards at Council Bluffs, on a debt claimed to be due it from Cochran. On the 22d day of August, Cochran gave to the bank his demand note in the amount of $609, payable to the order of the Exchange National Bank. The note was taken for a smaller sum than the amount of the check, because it was the custom of the bank to require a margin on corn to be covered by other securities when the full amount of the draft is advanced. Cochran testified, and there is no dispute about it, that he had a general agreement with the bank that he was to furnish them collateral for moneys advanced in this way, and that the bill of lading, or other satisfactory security, must be furnished upon these and other transactions. Cochran states that his place of business was some distance from the plaintiff bank, and that it was his practice to take the securities to this bank, including bill of lading, after they were received from the bank holding the sight draft and bill of lading. After the attachment was issued, plaintiff replevined the corn in this proceeding, shipped it to its own order at Little Rock, sold the corn and applied the proceeds upon the note, the amount realized not being sufficient to cover the face of the note. Cochran's account was overdrawn on the morning of the 22d of August. During the 22d, he deposited $1,561.76 to his credit, leaving

a net balance, as shown by the bank books, of $976.91 at the close of business; but on the same day, the bank O. K.d Cochran's checks in payment of drafts to the amount of $2,971. These checks that were O. K.d were not charged against his account until they were paid through the clearing house; and, on the morning of the 23d of August, at the opening of business, Cochran's account was overdrawn in the sum of $2,966.01. The bank was not advised of the attachment until the 27th day of August.

1. The first proposition is as to whether the plaintiff bank was the owner of this bill of lading, or entitled to its possession, at the time the levy was made by the officer under the attachment in question. It is contended by appellant that, upon the taking up of the bill of lading for the corn with the German National Bank on August 22d by Cochran, the corn became his property and was attachable in the hands of the railroad company as such for a debt owed by him; and he cites *Forcheimer v. Stewart,* 65 Iowa 593, and *Cragun v. Todd,* 131 Iowa 250, 252, to the proposition that title to property passes to the purchaser when the bill of lading of property consigned to the shipper, with draft attached, is taken up by the purchaser. But, under the undisputed evidence, it appears that, when Cochran took up the bill of lading, he was acting as the agent for the plaintiff.

1. Carriers: carriage of goods: bills of lading: indorsement: attachment: priority.

It is appellee's contention that a bill of lading, when properly indorsed, is symbolic of the property and by transfer passes title to the holder, citing *Schlichting v. Chicago, R. I. & P. R. Co.,* 121 Iowa 502; *Shaffer v. Rhynders,* 116 Iowa 472; *First National Bank v. Mt. Pleasant M. Co.,* 103 Iowa 518; *Anchor Mill Co. v. Burlington, C. R. & N. R. Co.,* 102 Iowa 262, 266; *Garden Grove Bank v. The Humeston & S. R. Co.,* 67 Iowa 526, 533. And further, that the fact that a bank which had received a draft with bill of lading attached, as security for a loan for the purchase of property shipped, had obtained a guarantee from the consignee that the draft would

be paid, does not release its lien as holder of the bill of lading, and the bank may enforce the same as against an attaching creditor of the borrower, citing *Shaffer v. Rhynders, supra.*

As before stated, the bill of lading for the corn was attached to the sight draft and indorsed in blank; and on August 22d, Cochran, against whom the sight draft was drawn, drew a check payable to the order of the German Bank to the amount of the draft, and then took the sight draft to plaintiff's bank and had it O. K.d under the arrangement before stated. Cochran's check was approved, in conformity with this practice. This check was in fact paid by the bank on the morning of the 23d of August, and the corn was attached at Council Bluffs on the afternoon of the 23d. It has been the holding of this court under the authorities before stated that a bill of lading is symbolic of the property, and that the bill of lading, when indorsed and delivered, passes the title to the property; so that plaintiff bank had the right to advance the money to take up this draft and to receive the note of Cochran and to take the bill of lading as collateral security for the payment of the note; so that plaintiff bank would be the lawful owner of the bill of lading and the carload of corn which it symbolized, unless it has been shown by the defendant that there was fraud in the transaction between Cochran and the Exchange National Bank.

2.   The next proposition, then, is as to whether there was sufficient evidence of fraud to take the case to the jury. At the risk of some repetition, it will be necessary to state again some of the facts bearing upon this point. 2. FRAUD: evi- dence: degree of proof. It is shown that Cochran had a contract with the bank permitting him to check on it for the purpose of taking up drafts with bills of lading attached for grain purchased by him, and by this agreement Cochran was required to deposit the bills of lading, or other satisfactory collateral, in lieu thereof, to be approved and accepted by the bank to secure the amount thus checked out. Cochran's standing with the bank was good. On the morning of August

22d, Cochran was overdrawn $556.57. A number of drafts came in for payment on that date, including the one under consideration. Cochran drew his check in the sum of $636.64 to the order of the German National Bank. The cashier placed his O. K. upon the same. Cochran took the bill of lading and the draft out of the bank; but, under the agreement with the plaintiff bank, plaintiff became the owner of and was entitled to have the bill of lading turned over to it. The evidence shows that the bill of lading was turned over to the bank, and that the bank did not know until the 27th of August that the car of corn had been attached at Council Bluffs.

Rather, the cashier of plaintiff bank, testifies that:

"When Cochran delivered the check to the German National Bank, he took up the draft, with the bill of lading attached, acting for us and as our agent. He brought the bill of lading to us to be held by us as security, according to our agreement."

There is some evidence tending to show that, after the bill of lading was delivered to the plaintiff bank, the bill of lading was deposited with the agent of the railroad company by Cochran, as agent for the plaintiff, and with its consent, with the understanding that the plaintiff bank was the owner of the car of corn, and prior to the time that the corn was attached. The reason for this was to have the car delivered as soon as it came in, to Mr. Cochran, acting as agent for plaintiff. But we think this is not very material, because the bill of lading had been delivered to plaintiff and it was entitled to possession of the same at all times.

Plaintiff's cashier also testifies that Cochran, at the time the check was approved, on the 22d of August, deposited his demand note in the sum of $609. Cochran also testifies that after he took the bill of lading he delivered the same to the plaintiff bank and attached to it his note for $609.

This is the substance of the testimony from which defendant claims there was fraud and collusion between plaintiff and Cochran, by which plaintiff was attempting to aid Cochran

in concealing and protecting his property from the claims of creditors. It is thought that, under the circumstances shown, there might be inferences drawn that are suspicious. But fraud is not presumed, nor can it be inferred from circumstances which, in the light of the entire case, are consistent with the theory of integrity and fair dealing between the parties. The burden of proof to establish fraud is upon the party pleading the same. *Shaffer v. Rhynders, supra.* See *Ley v. Metropolitan Life Ins. Co.,* 120 Iowa 203.

The facts constituting fraud must be established by proof that is clear, satisfactory and convincing. *Ley v. Metropolitan Life Ins. Co.,* 120 Iowa, at 209.

In the *Shaffer* case, *supra,* the bank with which the bill of lading was deposited took additional security, and it was claimed that such was evidence of fraud. It is claimed in the instant case that the fact that Cochran was

**3. FRAUD: evidence: taking security from responsible party.** financially responsible is evidence of fraud. But we think that the fact that a bank takes collateral security from clients that are responsible is not evidence of fraud.

In our opinion, the evidence was not sufficient to require the submission of the case to the jury on the question of fraud. If it had been so submitted, and the jury had found the transaction fraudulent, such a verdict would not have had sufficient support in the testimony.

3. Appellant complains that the court erred in permitting plaintiff to amend its petition after the evidence was closed and both parties had moved for a directed verdict.

**4. PLEADING: amendments: failure to request continuance: waiver.** They say that an amendment changing the issues materially entitles adverse party to a continuance, and they cite *Herrstrom v. Newton & N. R. Co.,* 129 Iowa 507, and other cases. In the original petition, plaintiff alleged that it was the absolute and unqualified owner of the corn, but the depositions taken in the case and the interrogatories which were answered showed that the interest of plaintiff was a

qualified one, and the case seems to have been tried upon that theory. After the amendment was filed, defendant moved to strike it from the files, and the motion was overruled. The amendment changes the language of the petition to some extent, and, as stated, alleges a qualified interest rather an unqualified ownership. The action is in replevin, and in some instances a party may be entitled to the possession of property without being the absolute owner; but, in any event, under all the circumstances, we think there was no abuse of discretion upon the part of the trial court. The defendant did not move for a continuance. Code Section 3602 provides that the cause shall not be continued unless a request is made for a continuance. And it was held, in *Wyland v. Mendel,* 78 Iowa 739, that after an amendment, if a continuance is not demanded, the party may not complain.

Criticism is made because the court, in preparing the form of verdict, used the word "bailee." But the form of the verdict is clear, and shows that the interest of plaintiff was a qualified one; and the jury could not have 5. TRIAL: verdict: been misled by the use of this word, whether form of verdict: inaccurate terms. it was a correct use or not. In fact, the matter is not seriously urged.

Some other minor points are argued, but they are covered by what has been said in the discussion of the other points.

We are of the opinion that the judgment of the district court was right, and it is, therefore—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.