JOHN PARSONS et al., Appellants, v. RINARD GRAIN COMPANY, Appellee; LEE L. WELLS et al., Interveners, Appellants.

CORPORATIONS: Liability for Corporate Debts—Claims Against
1   Officers for Exceeding Statutory Indebtedness. The fact that claims of creditors had been filed with the receiver of an insolvent corporation would not prevent the bringing of an action by stockholders, pending receivership, against the directors and officers, for the existing indebtedness of the corporation,

on the ground of their wrongful conduct in incurring an in-
debtedness in excess of that allowed by the articles of incorpo-
ration and the laws of the state.

RECEIVERS: Powers and Duties—Position in Litigation. A receiv-
er of an insolvent corporation is an officer of the court, re-
quired to handle the same under the direction of the court,
and is not a necessary party to a suit between stockholders and
creditors of the corporation, as against its officers and directors,
for claims against said officers and directors on excess in-
debtedness, and he cannot raise any question as to the propriety
of litigating such issues or complain thereof.

CORPORATIONS: Liability for Corporate Debts—Failure to Comply
with Statutory Requirements. Sec. 1611, Code, 1897, provides
that articles of incorporation must fix the highest amount of
indebtedness or liability to which the corporation is at any
one time to be subject, and Sec. 1613, Code Supp., 1913, requires
the publishing of the amount of capital stock authorized, and
also the highest amount of indebtedness to which the corpo-
ration may subject itself; and where the only definite limita-
tion on the indebtedness to be found in the articles was grossly
in excess of what the indebtedness of the corporation might be,
there was a violation of the said sections, and, under Sec. 1616,
Code, 1897, making the individual property of the stockholders
liable for the corporate debts upon the failure to substantially
comply with the statutory requirements, the stockholders of said
corporation were individually liable.

CORPORATIONS: Officers and Agents—Eligibility of Director not
Dependent on Being Stockholder. There is no statutory require-
ment that an officer or director of a corporation shall be a
stockholder, and, unless the articles of the corporation or the
by-laws so provide, it is not necessary that he be such.

CORPORATIONS: Officers and Agents—Statutory Liability—Ab-
sence of Design to Deceive. Where there was no design on the
part of directors of a corporation to deceive or defraud anyone,
they are not liable to creditors under Sec. 1620, Code, 1897,
which provides that intentional fraud in failing to comply sub-
stantially with the articles of incorporation, or in deceiving
the public or individuals in relation to their means or liabil-
ities, shall be a misdemeanor, and that anyone guilty thereof
shall be liable to a person damaged therefrom.

CORPORATIONS: Officers and Agents—Statutory Liability—Diver-
sion of Funds. There was no diversion of funds, under Sec.

1621, Code, 1897, providing for liability for wrongful diversion by the payment of dividends, where the profits of the corporation were sufficient up to that time to permit such a payment.

CORPORATIONS: Officers and Agents—Indebtedness Exceeding 7 Statutory Allowance—Actual Knowledge Necessary. The provision of Sec. 1622, Code, 1897, that the directors and officers of a corporation "knowingly consenting" to the incurring of indebtedness in excess of the amount permitted by law shall be liable to its creditors for such excess, means, with knowledge that the indebtedness exceeds two thirds of the corporate stock. Actual knowledge is required, and it cannot be inferred from mere inattention or neglect on the part of the officers; and it is not enough that it might have been obtained by the exercise of due care.

CORPORATIONS: Officers and Agents—Indebtedness Exceeding 8 Statutory Allowance—Renewal of Valid Obligation Not Violation. Renewal of a past existing indebtedness is not a violation of Sec. 1622, Code, 1897, providing against the incurring of indebtedness in an amount exceeding that permitted by law, where the indebtedness was valid at the time at which it was incurred.

CORPORATIONS: Officers and Agents—Statutory Liability—Negligence. 9 The neglect of the officers and directors of a company in not instructing its manager not to incur further indebtedness, after knowing that the capital had been wiped out and debts created, there being no intentional fraud, did not make them individually liable to creditors.

CORPORATIONS: Liability for Corporate Debts—Stockholders Severally Liable. 10 On a failure of a corporation to comply with Sec. 1611, Code, 1897, requiring that the articles must fix the highest amount of indebtedness to which the corporation may at any one time be subjected, each of the stockholders is liable for all of the debts of the corporation, and no one of them can complain of a judgment against him for his proportionate share of the indebtedness, instead of a judgment of the entire indebtedness against all of the stockholders.

*Appeal from Calhoun District Court.*—E. G. ALBERT, Judge.

## JULY 7, 1919.

THE opinion states the case. All parties appeal, except the Rinard Grain Company, the Rinard Savings Bank, C. C.

McPherson, and Fred W. Good.—*Reversed in part; affirmed in part.*

*Gray & Gray* and *Frick & Frick,* for appellants.

*E. C. Stevenson,* for appellees.

LADD, C. J.—A corporation known as Rinard Grain Company was organized September 28, 1912, to deal in grains, coal, and tile at Rinard. One Neyens was employed as manager, at a salary of $85 per month. Business was begun in December, 1912. The capital stock consisted of 54 shares of $25 each, all of which were paid in cash, except 6 shares, which were paid in lumber. The company had no elevator, but it erected corn cribs and coal bins. Neither Neyens nor the officers of the company appear to have had any previous experience in the line of business undertaken. Having been appointed a committee to wind up the affairs of the corporation, the plaintiffs, being president, secretary, and one of the directors, filed a petition, alleging the insolvency of the company and praying for the appointment of a receiver. One of the plaintiffs, John Parsons, was appointed receiver, and qualified as such. Upon his application, the court ordered the sale of all personal property, and also directed the collection of an assessment of $80 per share from the stockholders. Such indebtedness amounted to $3,000.49, not including the costs and attorneys' fees incident to this litigation. Only the corporation was notified of this application. See *State v. Union Stock Yards St. Bk.,* 103 Iowa 549.

Fifteen of the stockholders other than the officers filed a petition of intervention, September 2, 1915, in which they alleged that the action of the court was without notice to them; that the plaintiffs and other officers of the corporation were responsible to the corporation and its stockholders for failure to perform the duties the breach of which

rendered the corporation liable; that they incurred an indebtedness in excess of that allowed by the articles of incorporation and permitted by the laws of the state, and are now attempting to escape liability for indebtedness in consequence of their wrongdoing; that the by-laws purporting to confer on the directors the power to levy assessments are contrary to the statutes of the state; and that, in any event, the facts were not such as to authorize the exercise of such power by the board of directors. They prayed that Parsons be removed as receiver; that a disinterested person be appointed in his stead; and that plaintiffs and other officers and directors be held as liable for the existing indebtedness of the corporation, and that they be repaid the amounts by them paid for their respective shares.

The Rinard Savings Bank filed a petition of intervention, November 29, 1915, alleging that a note of $930 was executed to it by the Rinard Grain Company, by John Harm as president and John Parsons as secretary; that it was unpaid; that the receiver had allowed it as a claim; that he had in his hands certain money and property belonging to that company, which should be used in payment of the bank's claim; that plaintiffs herein were the officers of the corporation at the time the note was negotiated; and that it exceeded the indebtedness which the Rinard Grain Company, under its articles and under the statute, might lawfully incur: and said bank prayed that the receiver be ordered to turn over the money in his hands in satisfaction of said note, and that judgment for any balance be entered against plaintiffs. Each of two other interveners, C. C. McPherson and Fred W. Good, filed petitions of intervention. praying judgments for sums due them for corn against plaintiff, on the same grounds. The answers of the plaintiffs and receiver put the allegations of these several petitions of intervention in issue. The receiver filed an amendment to his answer to the petition of intervention of the 15

shareholders, and a cross-petition, naming all the 36 share-holders as parties, and, on the order of the court, caused all save the two nonresidents to be served with notice to appear and answer. The receiver moved to strike the petitions of intervention of the Rinard Savings Bank, McPherson, and Good, on the grounds which will hereafter appear, and the court ordered this motion "to be submitted with the case."

The plaintiffs' answers to these petitions, sought to have stricken, were filed subsequent to the above order. On hearing, the court overruled the motion to strike, entered judgment as prayed against the plaintiffs and the receiver on the petition of intervention of the Rinard Savings Bank, McPherson, and Good, and ordered assessments of $75 per share, and entered judgment thereon against the several shareholders accordingly. The receiver, plaintiffs, and the shareholders appeal.

I.   The receiver complains of the ruling on the motion to strike the petitions of intervention of the bank, McPherson, and Good. The grounds of this motion, in substance, were:   (1) That the claims of the interveners were filed with and allowed by the receiver;  (2) that the petitions of intervention are foreign to the issues joined;  (3) that the original case did not involve any question of liability between stockholders and their creditors, or between officers and directors of the company and its creditors;  (4) that. if any creditor of the company has any claim against the plaintiffs, their action is cognizable in law, and not in equity.

The fact that the several claims had been filed with the receiver did not relieve plaintiffs of any liability thereon, nor prevent the maintenance of an action against any or all

of them, pending the receivership. For this reason, the first ground of the motion was rightly overruled.

1. CORPORATIONS: liability for corporate debts: claims against officers for exceeding statutory indebtedness.

The receiver filed his report, November 29, 1915, saying that the claims of these interveners had been filed, and that he allowed each of them, and on the same day, the court entered an order approving this report. On the same day, the bank, McPherson, and Good filed their petitions of intervention. That of the bank sought no relief against the receiver, save that of instructing him "to turn over and pay to this intervener money now in his hands, and that the same shall be applied to the payment of said note,

2. RECEIVERS: powers and duties: position in litigation.

and that said intervener have judgment against said plaintiffs for any balance, and, in the event that the court finds that the money in the hands of the receiver cannot be used, that it have judgment against the plaintiffs and each of them for the amount of said note."

It will be noticed that no relief is sought against the receiver save the disposition of the funds themselves in his hands, and no grounds for the preference prayed were stated. The petitions of intervention of McPherson and Good asked that an order allowing said claims be entered, and that judgment be rendered "against the receiver, John Parsons, as such," and against the plaintiffs as individuals, and that the receiver be ordered to pay the claims out of any funds in his hands. As these claims had been allowed the day the petitions were filed, and all that was sought was an order of allowance and payment out of the funds in the receiver's hands, without asserting any preference, no remedy was prayed, as against the receiver, other than had already been accorded these interveners by the order approving the report of the receiver, and, therefore, no issue was presented which concerned the receiver; and the only issue raised as

against him, in the bank's petition of intervention, was whether its claim should be given preference by immediate payment from the funds then on hand. This much is said to show that the receiver was in no manner concerned in the issues raised as against the plaintiffs as officers and directors of the Rinard Grain Company. Moreover, the receiver, upon his appointment and qualification, became an officer of the court, and took possession of the property of the company as such, and was required to handle the same under the direction of the court, and was not a party to the suit, save as he might make himself such, in looking after the interests of creditors of the corporation or the protection of its property, in the interest of the corporation as well as of the creditors. See *McGowan v. Myers*, 66 Iowa 99. Surely, he, as receiver, had no such interest in the litigation between the interveners and the plaintiffs as, under the pleadings, would justify an objection on his part to the assertion of the interveners' claims against the officers and directors of the company. See Section 3594 of the Code. This evidently was the subsequent understanding of the receiver, for he did not interpose answer to the petitions of intervention, and does not pretend that he omitted to do so because of the postponement of the ruling on the motion. The plaintiffs answered such petitions, and put in issue the allegations contained therein, without objection, by motion or otherwise, to litigating the issues as raised by the pleadings, and on the side of the calendar where filed. True, they asserted that the answer is filed subject to the ruling on the motion to strike; but, as they interposed no motion, this can be given no consideration.

Our conclusions are: First, that the receiver, who was in no manner prejudiced by the ruling on the motion, cannot complain; and, second, that he was not in a situation to raise any question as to the propriety of litigating the issues in the intervention proceedings, nor to challenge the

propriety of the court's ruling, had the motion been interposed by plaintiffs. See *Reard v. Frieden,* 184 Iowa 823; *Kauffman v. Phillips,* 154 Iowa 542; *Hoyt v. Gouge,* 125 Iowa 603. What we have said disposes of the several grounds of the motion, and the court did not err in overruling it.

II. It appears that the Rinard Grain Company, by John Harm, its president, and John Parsons, its secretary, executed to the Rinard Savings Bank a promissory note, bearing date July 7, 1914, for $930, payable

3. CORPORATIONS: liability for corporate debts: failure to comply with statutory requirements.

one year from date, with interest at 8 per cent per annum, and that John Parsons, L. M. Fagan, and A. F. Shaw, plaintiffs, were directors of said company at that time; and it is alleged in the petition of intervention of the bank "that said note exceeded the amount of indebtedness to which said Rinard Grain Company, under its articles of incorporation and under the statute, were authorized to negotiate and borrow, thereby making said plaintiffs and each of them liable thereon." The claim of McPherson arose in this way: He sold and delivered to the Rinard Grain Company corn of the aggregate price of $716.60, for which said company, through its manager, gave him its check on the Rinard Savings Bank, and the bank, upon presentation, refused payment. His petition of intervention alleged that, at the time of purchasing the grain and giving the check, the Rinard Grain Company was insolvent, and that this was well known to its officers and agents, especially the plaintiffs, and that they well knew that the company had no money in said bank. It was further alleged that said officers and directors, at the time of said purchase and of the giving of said check, knew that the indebtedness so contracted for said corn was in excess of the indebtedness authorized by the articles of incorporation and defined by the statutes of the state.

Good had sold oats of the aggregate price of $256.30, for which amount a check was given by the company on the bank, and payment refused; and the allegations of the liability are precisely the same in his petition of intervention as in that filed by McPherson. It thus appears that the bank bases its right of recovery on the sole ground that the note, when given, exceeded the amount of indebtedness which the Rinard Grain Company might incur, and that the claims of McPherson and Good were based on two grounds: First, that the indebtedness was incurred when the Rinard Grain Company was insolvent, and plaintiffs knew that the money would not be paid; and, second, that the indebtedness contracted was in excess of that authorized by law.

The third of the articles of incorporation states that the "capital stock of this corporation at the beginning of the business shall be $1,200, and may be increased, from time to time, to not exceeding $10,000, and all increase over $1,200 shall be paid in, from time to time, on the issuance of shares of stock to purchasers becoming members."

The seventh article declared that the "corporation shall at no time have or subject itself to an indebtedness exceeding the amount of two thirds of the shares of stock actually paid up, as shown by the books of this society." This would sufficiently comply with the statutes, had the capital stock paid up been definitely stated, as appears to have been done in *Park v. Zwart*, 92 Iowa 37. If the two articles be construed together, it would be impossible to ascertain from them what limit of indebtedness was intended; for no one could say how many shares of stock had been issued, save by an examination of the books of the company.

The ninth article conferred power on the corporation to borrow money "upon a vote of two thirds of all the officers or directors at any regular or special meeting, providing that not more than $5,000 shall at any time be borrowed, and at no time shall the indebtedness for borrowing

money exceed the sum of $5,000." This sum is the only definite limitation on the indebtedness to be found in the articles, and may fairly be construed as having been intended to state the highest amount of indebtedness which the corporation might incur.

Section 1611 of the Code exacts that:

"Such articles must fix the highest amount of indebtedness or liability to which the corporation is at any one time to be subject, which in no case, except risks of insurance companies, and liabilities of banks not in excess of their available assets, not including their capital, shall exceed two thirds of its capital stock."

Under this section, then, the articles must have specified the highest indebtedness it might incur, and this might not have exceeded two thirds of its capital stock. As the corporate stock was fixed at $1,200 in the first instance and might not, in any event, have exceeded $10,000, the limit of indebtedness, as fixed by the ninth article, necessarily exceeded two thirds of its capital stock issued, or which might possibly be issued.

Section 1616 of the Code declares that:

"A failure to substantially comply with the foregoing requirements in relation to organization and publicity shall render the individual property of the stockholders liable for the corporate debts."

The word "and," as it appears after "organization" in this statute, has been construed as "or." *Marshall v. Harris,* 55 Iowa 182.

In *Heuer & Brockschmidt v. Carmichael,* 82 Iowa 288, this court held that to omit to state in the articles the highest amount of indebtedness or liability to which the corporation is at any one time to be subject was a failure to comply substantially with the "foregoing requirements" in relation to organization. The court there construed Sections 1061 and 1068 of the Code of 1873. These sections, in so far

as the questions now under consideration are concerned, are like the present statutes, as above quoted. The reasons for so holding in that case were thus stated:

"In determining whether this is a substantial failure, we must ascertain the purpose of this requirement. Those dealing with such corporations may know, in a general way at least, the extent of their assets, but cannot know the extent of their liabilities. If a limit is fixed in the articles, then the creditors may not only know the extent of the assets, but also the extent of the liabilities that may be lawfully contracted, and decide therefrom the amount to which they will give credit. It is the law that a creditor may recover, even though his debt is in excess of the limit fixed; not, however, because the fixing of a limit is immaterial, but because the corporation, having received value, is estopped from pleading its own failure to comply with the law."

See, also, *Thornton v. Balcom*, 85 Iowa 198.

Section 1613, Code Supplement, 1913, requires, among other things, that the amount of capital stock authorized shall be published, and also "the highest amount of indebtedness" to which the corporation may be subjected. Conceding, as we must, the purposes of the requirement to be as stated above, it is apparent that a statement of an amount grossly in excess of what the indebtedness of the corporation might be, would be much more misleading than the omission of any reference whatever to the indebtedness which might be incurred. For these reasons, we conclude that the requirement of Section 1611 was not complied with in the organization, and that, under Section 1616, the property of the stockholders became liable.

The petition of intervention, however, bases the bank's claim on their alleged liability as officers and directors, and not as stockholders. Neither the articles nor by-laws nor

any statute requires that any of the officers or directors shall be shareholders, and, in the absence of any such provision, ordinarily it is not absolutely essential to the qualification of a director or other officer that he be a shareholder in the company.

**4. CORPORATIONS: officers and agents: eligibility of director or not dependent on being stockholder.**

*Wight v. Springfield & N. L. R. Co.*, 117 Mass. 226 (19 Am. Rep. 412) ; 10 Cyc. 737.

Whether impliedly shareholders or not, no claim is asserted against these plaintiffs as such, and no liability is created by the statute against them as officers and directors.

Nor do we think there is any liability under the sections following.

**5. CORPORATIONS: officers and agents: statutory liability: absence of design to deceive.**

Section 1620 of the Code declares that: "Intentional fraud in failing to comply substantially with the articles of incorporation, or in deceiving the public or individuals in relation to their means or their liabilities, shall be a misdemeanor, * * * Any person who has sustained injury from such fraud may also recover damages therefor against those guilty of participating in such fraud."

A careful examination of the record has failed to convince us that these directors had any design of deceiving or defrauding anyone. Fraud may not be presumed, and in our opinion, there was not sufficient evidence to warrant the inference that any of the officers or stockholders entertained any such design.

Code Section 1621 relates to the diversion of funds of the corporation to other objects and the payment of dividends. There was no such diversion of the funds, though a dividend had been declared and paid. It appears that the profits were sufficient, up to that time, to permit of such payment. There was no intentional violation by the board of directors of either of these sec-

**6. CORPORATIONS: officers and agents: statutory liability: diversion of funds.**

tions, such as mentioned in Section 1622 of the Code. That section further provides that:

"If the indebtedness of any corporation shall exceed the amount of indebtedness permitted by law, the directors and officers of such corporation knowingly consenting thereto shall be personally and individually liable to the creditors of such corporation for such excess."

7. Corporations: officers and agents: indebtedness exceeding statutory allowance: actual knowledge necessary.

Did these plaintiffs knowingly consent to the creation of an indebtedness in excess of two thirds of the paid-up capital stock? In the connection used, "knowingly" obviously means, with knowledge that the indebtedness exceeds that permitted by law: that is, two thirds of the capital stock. Such want of knowledge may not be inferred from mere inattention or neglect on the part of the officers and directors sought to be charged. Actual knowledge is required; constructive, or that which might be obtained by the exercise of due care, is not enough. Of course, direct evidence of knowledge is not required. All essential is that the evidence bearing on the issue as to whether the officers and directors knew, be such as to warrant that inference. *Patterson v. Stewart,* 41 Minn. 84 (16 Am. St. 671) ; *Patterson v. Minnesota Mfg. Co.,* 4 L. R. A. 745; *Lewis v. Montgomery,* 145 Ill. 30 (33 N. E. 880).

The note on which the bank claims, was executed by John Harms as president and John Parsons as secretary, July 7, 1914, and was payable one year from date. This was given in renewal of a note for $800. It became due May 24, 1914, but the record does not disclose when it was given. Neyens testified that, in March or April, 1914, "there had been about $800 borrowed in the ordinary course of business from the Rinard Savings Bank. * * * I think they had

8. Corporations: officers and agents: indebtedness exceeding statutory allowance: renewal of valid obligation not violation.

got the $800 at the Rinard Savings Bank." Parsons testified that "the difference between $800 and $930 was the interest, and a little money they needed."

Possibly the last note may have included the $80 note spoken of by Neyens; but this was not shown, and it is uttirely impossible to say how much, if any, money was included. Evidently it was but a small item, and will be given no further attention. There was no showing of when the debt for which the $800 note was given was incurred, or when the note therefor was given. For all that appears, this indebtedness did not exceed, at the time it was incurred, or at the date of the note, the amount permitted at law. Appellee has argued the point on the theory that, if plaintiffs knowingly consented, by renewing the note when in excess of the limit fixed by law, they would be liable. The statute, as we think, has reference to the creation of an indebtedness, and not to an existing or past debt. If the indebtedness was then valid and subsisting, it was the duty of the officers of the company to recognize its validity, and pursue such course as, in their judgment, would best conserve the interests of the corporation. The vice sought to be obviated by the statute, and for which a remedy is provided, is the creation of an indebtedness above that permitted under Section 1611 of the Code. Surely, no harm could be done by consenting, then, whether knowingly or not, after the indebtedness had been created. The statute is not penal, but contractual in its nature, and the consequence to the officer or director is that there is imposed on him a liability similar to that of surety for the company. This was the view of the court in *Lewis v. Montgomery*, 145 Ill. 30 (33 N. E. 880), speaking through Bailey, C. J.:

"In *Woolverton v. Taylor*, 132 Ill. 197, the statute sought to be invoked here was under consideration, and we there held that, while the liability imposed is not penal, but contractual, it is like that of a surety, and therefore *stricti*

*juris.* This being the case, the statute should receive a construction in consonance with the nature of the obligation imposed. The words employed should be interpreted according to their plain and obvious meaning, and should not be extended by construction, so as to embrace cases not clearly within the terms of the statute. The liability is created only where the indebtedness of the corporation exceeds the amount of the capital stock, and is imposed only upon the directors and officers assenting to such excess of indebtedness. This plainly means assenting to its creation. Manifestly, a recognition of the indebtedness by the directors after it has been so contracted as to become binding upon the corporation should not have the effect of charging them with this statutory liability. After the indebtedness had been created by such agents, and in such manner as to constitute it a valid obligation of the corporation, it becomes the duty of the directors to recognize its validity, and, so far as is in their power, provide for its payment."

We are of the opinion that the court erred in entering judgment against the plaintiffs on the bank's petition of intervention.

Nor are we able to find any evidence that plaintiffs, or any of them, were aware that Neyens, as manager, bought the corn and oats of McPherson and Good and issued checks to them, until long after this was done. The purchase appears to have been on the manager's own motion, and not at the suggestion of or to carry out the scheme of the officers or directors of the company. The worst that can be said is that these plaintiffs, with other directors, after knowing that the capital had been wiped out and debts created to the extent of about $2,000, left the manager without more definite instructions than he had been acting on, which were none at all. The neglect of the officers and directors of this company may well be con-

9. CORPORATIONS: officers and agents: statutory liability: negligence.

demned, for they gave little attention to the proper discharge of their duties as such, and utterly failed to appreciate their obligations toward the shareholders and the public with which the company was dealing. We are satisfied, however, that they acted without design to wrong any man. Their negligence was that of ignorance, and resulted largely from a misconception of their duties; and we are not ready to say of them that they were guilty of intentional fraud. For these reasons, the judgments in favor of McPherson and Good must be and are reversed.

III. On May 24, 1916, the receiver prayed that an assessment of the stock be ordered levied against each shareholder; and subsequently, the court ordered such assessment of $75 per share, and that the receiver bring each shareholder into court by appropriate notice, and collect from those who had not already paid. Some paid, and judgments were rendered against others for the respective amounts of the assessment. The shareholders against whom such judgments were rendered, appeal.

10. CORPORATIONS: liability for corporate debts: stockholders severally liable.

What we have previously said indicates that, under Sections 1611 and 1616 of the Code, each of these shareholders was liable for all the debts of the corporation, and, having been so liable, none is in a situation to complain of the judgment against him for his proportionate share of the indebtedness, instead of the judgment of the entire indebtedness against all of them. For this reason, the assessment of the stock was not prejudicial, and the shareholders have nothing concerning which they can properly complain. The several judgments against them are affirmed.

Our conclusion is that, on plaintiff's appeal, the judgments in favor of the Rinard Savings Bank, McPherson, and Good are reversed; on the shareholders' appeal, the judgments are affirmed. One half of the costs will be taxed

to the shareholders, and one half thereof to the bank, Mc-Pherson, and Good.—*Reversed in part; affirmed in part.*

WEAVER, GAYNOR, and STEVENS, JJ., concur.