STEPHENSON & PETERSON, Appellees, v. JOHN F. B. SVENSON et al., Appellants.

MECHANICS' LIENS: Including Nonlienable Claims. The non-
1    fraudulent inclusion, in a statement for a mechanics' lien, of
nonlienable claims will not vitiate the lien for claims which
are lienable.

FRAUD: Presumption Against Fraud. Principle recognized that,
2    when the proven facts are consistent with any reasonable theory of good faith and honest intent, they should be so construed.

CONTRACTS: Separate Instruments Constituting Contract. A pre-
3    liminary bid on contemplated work may constitute a part of a
formal written contract, though not specifically mentioned in
the latter.

*Appeal from Hamilton District Court.*—G. D. THOMPSON, Judge.

NOVEMBER 11, 1919.

ACTION in equity to foreclose a mechanics' lien. There was a decree for plaintiff, and defendants appeal.—*Affirmed on plaintiff's appeal; modified and affirmed on defendants' appeal.*

*Chase & Chase,* for appellants.

*Wesley Martin,* for appellees.

WEAVER, J.—The parties entered into a written contract, by which plaintiffs undertook to furnish the necessary labor and materials and erect for the defendants a business building in Webster City, for the agreed compen-

sation of $6,444, payable in installments, according to the progress of the work.

In this action, plaintiffs allege the performance of the contract on their part, and that there is unpaid, due, and owed to them therefor a remainder of the agreed price, together with other items of account for work done and materials furnished, in addition to those contemplated by the contract, to the aggregate amount of $2,326.38, for which they ask judgment, and that their mechanics' lien therefor may be established and foreclosed.

The defendants admit the making of the contract, but deny all other allegations of the petition, and especially deny that the work has been done or the building completed according to the terms of the agreement. Further, and by way of counterclaim, it is alleged that the building was not completed and ready for occupancy for a month or more after the time fixed therefor in the contract, and that, in the construction of the building, plaintiffs failed in many respects to observe the provisions of the agreement or the requirements of the plan and specifications upon which the work was to be done—for all which he asks to recover damages in the sum of $2,500.

On the trial below, the court, after allowing defendant upon various items of his counterclaim the aggregate sum of $486.70, found a balance due the plaintiffs, upon the contract price of the building and for extra work and materials furnished therefor, an aggregate amount of $1,337.65, for which they were entitled to a mechanics' lien, as prayed, and further found plaintiffs entitled to recover an additional sum of $302.65 for work done, materials furnished, and expenses incurred by them on the defendant's account, but not entering into the construction of the building, and therefore not secured by a mechanics' lien.

From the decree entered to the foregoing effect, both parties have appealed; but, the defendant's appeal being

first perfected, he alone will be designated appellant in this opinion.

I.  One of the principal contentions of the appellant is that the plaintiffs are not entitled to any relief upon their claim for a mechanics' lien, because they embodied in their itemized and sworn statement, filed for such

**1. MECHANICS' LIENS: including non-lienable claims.** lien, several different items and charges of a nonlienable character.  The trial court found that the objection was well taken as to several different items, some of these being charges on which defendant was held to no liability, while others, though proper charges against the defendant, were not of a character to entitle plaintiffs to a lien; but, after making all due allowance for such erroneous charges, there was found, as already said, a remainder of $1,337.65, upon which the claim for a statutory lien was upheld.

In support of his objection to this finding, counsel for appellant cite us to *Stubbs v. Clarinda, C. S. & S. W. R. Co.,* 65 Iowa 513, 515; *St. Croix Lbr. Co. v. Davis,* 105 Iowa 27; *Nancolas v. Hitaffer,* 136 Iowa 341, 345; and others of that class.  Following these and the rest of our precedents upon this subject, the rule in this state is well settled that a claim for mechanics' lien will not be sustained where it appears that the claimant, in bad faith, or with a recklessness which is tantamount to bad faith, has included in his statement items which he knows, or ought to know, are nonlienable.  Applying that test to the facts developed by the testimony in this record, we are satisfied the trial court did not err in holding that there is no sufficient reason shown for charging the plaintiffs with bad faith or fraudulent purpose.  The burden

**2. FRAUD: presumption against fraud.** of proving fraud is upon the party who asserts it; and it is an elementary proposition that, when the proved or admitted

facts are consistent with any reasonable theory of good faith and honest intent, they should be so construed.

It is not to be expected that a mechanic or laborer, not skilled in the law or in the construction of statutes, will al. ways rightly discriminate between items for which a lien may be had and those for which no lien is provided; and, if he mistakenly includes in his claim some charge which ought to have been omitted, the party against whom it is filed is not materially harmed, and it may be taken for granted that the court will readily correct the mistake, in entering its decree; and if, in the final adjudication, the defendant's property is not subject to a greater charge than the statute contemplates, he suffers no wrong. The evidence in this case fairly negatives any fraudulent purpose on plaintiffs' part.

II. If we except two items charged as extras, and specially referred to in the next paragraph of this opinion, we think there is no necessity for any discussion of the evidence bearing on the numerous claims and counterclaims presented by the pleadings. We have read the record relating to these matters, and are satisfied that the conclusions reached by the trial court effectuate substantial justice in these respects. The dispute as to each involves only questions of fact, to be determined upon the evidence and the reasonable inferences to be drawn therefrom, and nothing is to be gained by prolonging this opinion to set out the details of testimony. It is sufficient to say as to each that its disposition by the terms of the decree appealed from appears to be well supported by the record.

III. The two items of extras allowed to the plaintiffs by the trial court and excepted by us from our last preceding statement are charges for plumbing, $148, and heating

$327. The evidence shows that, on August 28, 1916, plaintiffs submitted to defendant a written bid for the job of constructing the building which the latter proposed to put up. That bid was as follows:

3. CONTRACTS: separate instruments constituting contract.

"Webster City, Iowa, August 28, 1915.

"The undersigned hereby propose to build and construct building for John Svenson, according to plans and specifications marked Exhibit A. To install heating plant ready to connect city heat, do the plumbing for city water and two toilets. Furnish all labor and material for same, for the sum of six thousand four hundred forty-four dollars (6,444).

"Respectfully submitted,

"Stephenson & Peterson."

The evidence further shows quite satisfactorily that, in undertaking his building enterprise, defendant was expecting to procure a loan or advancement from one Barner, a fact which seems to have been known to all the parties; and, when plaintiffs were ready to bid upon the job, the plaintiffs, or one of them, together with defendant, visited Barner at his home, and discussed with him, to some extent, the provisions that would enter into the bid or contract, or both. The written bid which we have above quoted was prepared at that interview, as we understand the testimony, and it was at Barner's suggestion that special mention of the plumbing and heating was made in the bid. Barner was found willing to advance the money needed; but, it being then after banking hours, and it being necessary for him to make some arrangement with the bank which would pay out the funds, further action was postponed until the next day, when the parties again visited Barner, and were accompanied by Rood, the bank cashier. At that meeting, the written contract was made out and signed, and the written bid, made the day before, was pin-

ned to the contract as "page 1," and an arrangement made by which the bank, for Barner, would make the several payments upon the contract as they should fall due. The bid, -the contract, and the written authority to the bank to make the payments were tacked together, and deposited with the bank cashier until produced in evidence on the trial. The amount named in the bid and the agreed price named in the contract are identical, $6,444. The contract does not, in specific terms, refer to the bid; but both contract and bid make reference to specifications "Exhibit A;" and the only Exhibit A shown in the record is the one attached to and made part of the contract. We infer, though it is not expressly so said, that Exhibit A is part of a printed form which the parties made use of in drawing the contract. We think it is further inferable that this form was before the parties when they met on August 28th, and the bid was put in writing.

There is no reference in these specifications to the subject of plumbing and heating; and, if these items are to be considered a part of the job, compensation for which is included in the contract price of $6,444; it must be on the theory that, under the circumstances here related, the bid attached to the contract is to be treated as a part of it. It will be observed that the amount of the bid made on August 28th is precisely the same as the price named in the contract on the following day, $6,444. Plaintiffs seek to explain this likeness as follows: They admit that the bid was intended to cover the completion of the job, including plumbing and heating, which they estimated at $475, but say that, before the contract was signed, they had an agreement or understanding with defendant, by which more expensive windows and ceilings were to be put in, a different roofing material used, and skylights added to the plan, the aggregate increased cost of all of which happened to be exactly equal to the estimated cost of plumbing and heating,

$475; so that the amount proposed by their bid was left unchanged, and the plumbing and heating eliminated from consideration in making the contract.

The explanation so given is confused and unsatisfactory, and we are led to the conclusion that the trial court should not have sustained the plaintiff's claim for payment of these items in addition to the contract price of the building. While plaintiffs deny that the specifications on which they bid are the same which appear in evidence with the contract, they do not produce any other, or account for their absence. If they were bidding on a cheaper grade of windows or roofing or ceiling, or on a building without skylights, such specifications must have been included in the Exhibit A to which they refer in their written proposal, and the burden is clearly upon them to produce the exhibit, or, if it is lost, to make a clear and convincing showing of its contents. In this they distinctly fail. We think there can be but little doubt that the Exhibit A referred to is the same Exhibit A which is attached to the contract.

We further think it clear that although, aside from the bid itself, Exhibit A contains no reference to the plumbing or heating, the effect of the bid is to add those items to the specifications. The proposal there made is to construct a building according to the plans and specifications in Exhibit A, and, in addition thereto, "to install heating plant ready to connect city heat, do the plumbing for city water," etc., and to perform the entire job for $6,444. Indeed, plaintiffs concede this to be true. When, therefore, the agreement was closed by tacking the written bid or proposal to the written contract, and these, with other papers, were by the parties deposited in the bank, as the evidence of their undertaking, we think they must all be construed together, as the agreement by which the rights of the parties are to be tested and measured.

IV. Plaintiffs' appeal goes solely to the question of

the amount due from the defendant, a matter which is sufficiently covered by what we have already said. It is reasonably clear that defendant was entitled to some allowance because of plaintiffs' failure in certain minor respects to perform the work according to contract, and the finding of the trial court in these respects is well supported by the evidence.

On the whole record, therefore, we reach the conclusion that, upon plaintiffs' appeal, the decree should be affirmed, and upon defendant's appeal, it should be modified by deducting the sum of $475 from the amount for which the lien is established, and that, upon the remainder so found unpaid, as well as upon their further recovery for items which are nonlienable, interest at 6 per cent should be computed from August 17, 1917.

As thus modified, the decree will stand as rendered by the district court.—*Affirmed on plaintiffs' appeal; modified and affirmed on defendants' appeal.*

LADD, C. J., GAYNOR and STEVENS, JJ., concur.