BURLINGTON SAVINGS BANK OF BURLINGTON, VERMONT, Appellee, v. PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant, et al., Appellees.

NOVEMBER 13, 1928.

REHEARING DENIED FEBRUARY 15, 1929.

*Stout, Rose, Wells & Martin* and *P. W. Harding*, for appellant.

*Sims & Page* and *Tinley, Mitchell, Ross & Mitchell*, for plaintiff, appellee.

*L. W. Powers*, for August and Sena Brensel, appellees.

*J. E. Shaw Van*, for C. L. Voss, appellee.

ALBERT, J.—This litigation grew out of the following facts: In 1915, C. L. Voss was the owner of 200 acres of land in Crawford County, Iowa. He secured a loan thereon from plaintiff in the sum of $12,000, evidenced by two promissory notes, dated November 1, 1915, and due March 1, 1921, with 6 per cent interest. To secure the same, he executed in due form a mortgage on said tract of land, bearing even date with the promissory notes, which mortgage was duly entered of record. On March 1, 1921, an extension was made on said loan for a term of five years from that date. In the intermediate time, however, and on February 9, 1920, this land was deeded by Voss, by warranty deed, to August Brensel, and Brensel assumed and agreed to pay the aforesaid notes and mortgage.

On June 4, 1919, Brensel contracted to sell this land to William C. Miller for $43,000, and Miller assumed and agreed to pay

the $12,000 mortgage on the land. The last payment under this contract was to be made on March 1, 1930. Parenthetically it may be said at this point that, after Miller made some payments of interest on plaintiff's $12,000 mortgage, he rued his bargain, and by agreement with Brensel, the contract was canceled, and Miller and wife executed a quitclaim deed of this land to Brensel. Prior to the making of this quitclaim deed, and in the early part of 1921, when the Burlington Savings Bank mortgage was about to become due, Miller made an application to the Peters Trust Company of Omaha for a loan of $12,000, to take up the existing loan held by the Burlington Savings Bank. This application was signed and sworn to by William C. Miller. Brensel did not sign the same; but stated in the application that he and his wife would join in the mortgage. This application was made in November, 1920. The same was submitted to the Prudential Insurance Company of America (which, for brevity, will be hereinafter referred to as the Prudential), and the application was accepted. A detailed history of this transaction is necessary, for the reason that on it rests largely, if not wholly, the decisive point in the case. The Peters Trust Company, the representative of the Prudential, was furnished with a properly executed note and mortgage on this land, signed by Brensel and wife and Miller and wife, payable to the Prudential. The same was duly recorded, and an abstract furnished, apparently showing on its face that the mortgage was the first lien on the land. This was accomplished by a release of the mortgage of the Burlington Savings Bank, which is confessedly a forgery. When the mortgage and notes now held by the Prudential were submitted to the Peters Trust Company, they were accompanied by a writing addressed to the Trust Company, signed by Miller and Brensel, which reads as follows:

"Please deliver to my agent, Bank of Denison, Denison, Iowa, the proceeds of my loan for $12,000.00 secured by mortgage on my farm [then follows a description of the land] after paying the existing loan of $No to and oblige."

Printed thereon also were these words:

"Unless this order is properly signed and returned with the bond, the check for proceeds of the loan will be made payable to the borrower, after payment of any existing liens."

At this point it may be said that Brensel, by way of defense, claims that he is a German, and cannot read or write English, and that his signature was procured to this order by fraud and false representations. The evidence in the case, however, under the well recognized rules, does not support this contention, and we will give no further attention to this claim, except for its evidential value. See, however, *Nesmith v. Platt*, 137 Iowa 292; *Exchange Nat. Bank v. McCaffery*, 175 Iowa 451; *Jenkins Lbr. Co. v. Cramer Bros.*, 182 Iowa 161; *Lynch v. Kerslake*, 186 Iowa 983; *Parsons v. Rinard Grain Co.*, 186 Iowa 1017; *Stephenson & Peterson v. Svenson*, 187 Iowa 802.

In pursuance of this order, the proceeds of this loan, less commission and incidental expenses, were credited by the Peters Trust Company to the Bank of Denison, and the Bank of Denison subsequently drew the proceeds thereof. It failed to pay the Burlington Savings Bank loan, and in no way accounted to either Miller or Brensel therefor. It is conceded that the Bank of Denison was a private bank, owned and controlled by Kuehnle & Voss.

Aside from what is noted as to the defense made by Brensel, these facts are admitted by all parties, or are abundantly proven: The extension of the loan to the Burlington Savings Bank by Voss was made after he had executed a warranty deed of the land to Brensel; hence he was in no position to become a party to such extension. As stated, the release of the Burlington Savings Bank mortgage was confessedly a forged release. So far, then, neither the Prudential, Brensel, nor Voss had any defense as against the Burlington Savings Bank mortgage and note. We hold this because the court so found, and the Prudential does not urge or argue the incorrectness of the decree so far as it is held that the Burlington Savings Bank mortgage was the first lien on the land, and the order and foreclosure thereof as against all parties.

The real bone of contention left in the case is whether or not the Prudential is entitled to a judgment against the Brensels. Briefly stated, the defense of the Brensels is that, in all of the transactions between them and the Prudential, Kuehnle & Voss were the agents of the Prudential, not agents of the borrower. They claim, therefore, that, when the money was paid to Kuehnle & Voss, the Prudential was simply paying it to its own agent,

and if they failed to account for the same, or embezzled it, the loss was on the Prudential, and not on the borrower. The Brensels say that the mortgage and note were without consideration. The question for determination, therefore, is whether Kuehnle & Voss were acting as agents of the borrower or the lender, at the time this money passed into their hands. A large amount of evidence was introduced on this proposition, showing the history of the dealings between the Prudential and Kuehnle & Voss, covering a number of years, commencing with 1909, and extending down to about the time of the trial of this case.

It is to be remembered that the Prudential is a New Jersey corporation, with its home office at Newark, New Jersey; that the Peters Trust Company is a corporation with its principal place of business at Omaha, Nebraska; that the Bank of Denison (Kuehnle & Voss) was situated at Denison, Iowa; and that the Brensels were the owners of a farm near Denison.

Much of the evidence introduced along this line was correspondence between Kuehnle & Voss and the Prudential or the Peters Trust Company. Among other exhibits introduced was a contract between Kuehnle & Voss and the Prudential, under date of February 14, 1913, which, in a general way, tends to mark out the relations between them. It is therein stated that the first parties (Kuehnle & Voss) desired to submit applications for loans upon the security of mortgages on lands located in the state of Iowa, and that the Prudential was willing to receive applications and make loans where the applications were approved by it. The contract then proceeds to describe the method in which these loans were to be submitted, providing for an abstract of record, attorney's report, and making numerous other provisions, the purpose of which seems to be to require Kuehnle & Voss to pay all outstanding taxes, loans, and incumbrances upon the property, and take a receipt from the borrower for the balance due, and to forward the same, with the mortgage, duly recorded, notes, and abstract showing the mortgage to be a first lien on the property, to the Prudential; and the money was then to be paid to Kuehnle and Voss. Kuehnle & Voss at no time received any commission or payment for services from the Prudential. The contract further provides that, in all transactions arising out of the performance of this agreement, the party of the first part was acting and would act as agent of the borrower

in negotiating said loans, and in no instance was acting or was authorized to act as agent of the Prudential.

There are numerous other provisions in the contract which need not be set out.

It is the claim of the defendants that the course of dealing between Kuehnle & Voss and the Prudential shows on its face that, notwithstanding the provisions of the contract, Kuehnle & Voss were the agents of the Prudential. Where the dispute is, as it is in this case, whether the person is the agent of the borrower or the lender, a stipulation in the contract between the lender and the intermediary as to this relationship is not conclusive, but it is permissible to show by testimony just what the course of business was between the lender and the intermediary, and if such evidence shows, as a matter of law, that the relation of principal and agent did in fact exist, such relationship cannot be disguised by any form of contract. The court will ascertain the facts as they actually are, and therefrom determine the true relationship between the parties. *Youtsey v. Union Cent. Life Ins. Co.*, 191 Iowa 1120; *Donaldson v. Kenegy*, 197 Iowa 893, 898; *Trotter v. Grand Lodge*, 132 Iowa 513; *Harrison v. Legore*, 109 Iowa 618; *McLean v. Ficke*, 94 Iowa 283, 289.

We have reviewed the evidence with care, and are satisfied, under the showing here made, that, notwithstanding the provisions of the contract above referred to between Kuehnle & Voss and the Prudential, their relation was that of principal and agent.

We may then start with the assumption that, in the making of this loan, the relation between the Prudential and Kuehnle & Voss was that of principal and agent. This, however, does not solve the problem before us. The question is, when the money was delivered by the Peters Trust Company to Kuehnle & Voss, were Kuehnle & Voss then acting as agents of the Prudential, through the Peters Trust Company, or did they, in the receipt of this money, receive the same as the agents of the borrower? Could the borrowers by this order make Kuehnle & Voss their agents to receive this money on the final closing of this loan?

The law is universally settled that primarily an intermediary cannot be the agent of both parties. The exception to this rule is that, where both parties are fully advised as to all of the

facts, and each consents that the intermediary may act as agent for the other, such agency is valid. We have recognized this doctrine in *Seymour v. Shea*, 62 Iowa 708; *Morey v. Laird*, 108 Iowa 670; *Merrill v. Sax*, 141 Iowa 386; *Larson v. Thoma*, 143 Iowa 338. See, also, 2 Corpus Juris 712. Where the interest of the two principals is not conflicting, and loyalty by the agent to one of them is not a breach of his duty to the other, then the intermediary may act for both parties. 2 Corpus Juris 713.

The evidence in the case shows that this money was paid by the Peters Trust Company, representing the Prudential, to Kuehnle & Voss by reason of the written order above set out, signed by the borrowers, directing the Peters Trust Company to pay the same to Kuehnle & Voss, as the agents of the borrower. The testimony shows that this money would not have been thus paid, had it not been for the said written order. Under the general rule of law above referred to, we see nothing to prevent the borrowers from legitimately making Kuehnle & Voss the borrower's agent, to receive this money for them. By so doing, no breach of duty or loyalty to the Prudential occurred. See *Youtsey v. Union Cent. Life Ins. Co.*, supra; *Hedges v. Holland*, 203 Iowa 1149.

The fact that Kuehnle & Voss may have afterwards embezzled this money, and failed to apply it on plaintiff's mortgage, is in no way controlling in determining the question we have before us. The evidence shows that, had it not been for this receipt, the borrowers would not have paid any money to Kuehnle & Voss, but would themselves have applied it directly on the satisfaction of plaintiff's mortgage. The loss having been brought about by reason of the acts and conduct of the borrowers, they must, therefore, be the losers.

One other question is discussed, as bearing on this proposition, and that is that Kuehnle & Voss furnished to the Prudential an abstract of title which was false, in that it showed the Prudential mortgage to be the first lien on the property, and disposed of plaintiff's mortgage by showing a satisfaction thereof which it is conceded never existed, and the Burlington mortgage was never in fact satisfied. The relation here is somewhat peculiar. The borrower, of course, was required to furnish an abstract. The abstract was made by Kuehnle & Voss, and falsified

by them. If Kuehnle & Voss are to be treated as agents of the borrower in the making of this abstract, then, of course, by furnishing a false and fraudulent abstract they perpetrated a fraud upon the lender. If, on the other hand, Kuehnle & Voss are the agents of the lender in furnishing this abstract, then a fraud was perpetrated on the Prudential by its own agent, and it should not be permitted to complain. There is much in the correspondence between the Prudential and Kuehnle & Voss to the point that the Prudential was complaining about the kind of abstracts that were furnished by Kuehnle & Voss, even threatening at times to sever their relations if this matter were not rectified; but, as we view this case, this question is not controlling. It is patent on the face of the record that, if Kuehnle & Voss had furnished an accurate abstract of title, it would have shown the plaintiff's mortgage unpaid; and the evidence further shows that, had such been the fact, the Prudential, through the Peters Trust Company, would have paid the plaintiff's mortgage directly, and therefore no loss would have occurred, because no money would have passed into the hands of Kuehnle & Voss. The controlling point, however, as we view it, is that the money in the instant case was paid out to Kuehnle & Voss wholly because of the written order signed by the borrowers; and by so doing, the Prudential paid the money to the agent of the borrower, and not to its own agent.

This case is materially different from the case of *Burlington Sav. Bank v. Prudential Ins. Co.*, 206 Iowa 475, in the following particular: In that case, reliance was put upon a receipt, signed by the borrower, certifying that:

"Kuehnle & Voss have made full settlement with me for the loan I made with the Prudential Insurance Company of America, for twenty-four thousand dollars."

The opinion in that case, however, holds that such receipt was procured by fraud, and therefore void.

In the instant case, we have the written direction of the borrower to the Trust Company, directing the delivery of the proceeds of the loan to the Bank of Denison (Kuehnle & Voss), which is in no way successfully attacked, but is a valid and binding instrument; and therein lies the difference between these two cases.

The action of the district court in entering judgment of foreclosure against all other parties defendant is affirmed.

As to the cross-petition of the Prudential against the Brensels, the district court erred in dismissing the same.—*Affirmed in part; reversed in part.*

STEVENS, C. J., and EVANS, DE GRAFF, and WAGNER, JJ., concur.